423 So.2d 1266 (1982)
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, OFFICE OF FAMILY SECURITY
v.
Matilda PERRY.
No. 82 CA 0167.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
Rehearing Denied January 14, 1983.
*1267 Joseph A. Donchess, Staff Atty., Dept. of Health & Human Resources, Baton Rouge, for appellant.
Mary E. Howell, Howell & Bayer, New Orleans, for appellee.
Robert R. Boland, Jr., Civ. Service Legal Counsel, Dept. of State Civ. Service, Baton Rouge, for George Hamner, Director of the Dept. of State Civ. Service.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
The Department of Health and Human Resources, Office of Family Security (Department), appeals from a decision of the Louisiana Civil Service Commission (Commission) reversing the ten-day suspension of Matilda Perry (appellee), a permanent employee of the Department, classified as an Eligibility Worker.
The facts surrounding the suspension are as follows: On May 9, 1979, appellee left around noon for her lunch break, which, *1268 according to Department policy, was to last thirty minutes. Appellee did not return to her office until approximately 3:00 p.m. and missed two scheduled appointments and two visits from unscheduled clients. This extended lunch break was unauthorized. Prior disciplinary measures for similar infractions had been levied against appellee, so her supervisor, Louis Broussard, decided to recommend suspension for ten days. On the morning of May 11, 1979, when appellee arrived at work, she was told to report to Broussard's office which was five or six blocks down the street. When she arrived at his office, she was informed that her suspension was for ten working days beginning at 8:00 a.m. on May 11. It was conceded that it was after 8:00 a.m. when she received this notice. Although the exact time could not be ascertained, it was estimated to be between 8:05 a.m. and 8:20 a.m. On May 15, she received the required written confirmation of suspension.
On June 15, appellee filed, in proper person, a notice of appeal to the Commission, denying that she had blatantly disregarded her clients' interests by failing to return from lunch and missing her scheduled and nonscheduled appointments. A public hearing was held before a referee on July 29. At that time, counsel for appellee orally raised a motion challenging the sufficiency of the suspension notice given on May 11. The motion for summary disposition of the case was submitted to the Commission.
At the time of the hearing, Civil Service Rule 12.2, which governs the notice requirements for suspensions, read in pertinent part as follows:
"(a) Any employee who is suspended without pay shall be so notified by his appointing authority on or before the effective date of the suspension." [emphasis ours]
The Department argued that notice was proper under the rule, as appellee was notified on the effective date of the suspension. Appellee argued that unless notice was given prior to the commencement of the suspension, it was invalid. By opinion filed on January 29, 1982, the Commission granted appellee's motion and appeal. It found:
"... the intent of Civil Service Rule 12.2 was to afford prospective notice or concurrent notice to employees of the disciplinary action."
The Commission reasoned that if the rule were accorded any other meaning, an employer could allow an employee to work part of a day, or even the entire day, and then give notice that he had been suspended as of that morning, without pay for the work performed. Therefore, the Commission interpreted Rule 12.2 as requiring that notice be prospective or concurrent with the suspension.
Applying this interpretation to the facts at hand, the Commission held that insufficient notice had been given. The opinion of the Commission states:
"During the taking of testimony on the merits of this appeal, it was established that appellant was orally notified of her suspension sometime after 8:00 a.m. on May 11, 1979. The suspension became effective at 8:00 a.m. on May 11, 1979."
Therefore, the Commission found that appellee had been notified after the effective time of her suspension. The motion for summary disposition was granted, and it was ordered that the suspension be reversed. From this decision, the Department perfected this devolutive appeal.
There are two issues presented by this appeal:
(1) Was the Commission's interpretation of Civil Service Rule 12.2 correct?
(2) Was there proper notice of the suspension?
Initially, we note that this hearing was conducted before a referee. Recently, we held in Wells v. Department of Corrections, Etc., 417 So.2d 377 (La.App. 1st Cir. 1982), writ denied, 420 So.2d 983 (La.1982), that members of the Commission must read and examine (or "hear", if the transcript is in the form of a taped transcription) the transcript of testimony as made up before the referee, before reaching a decision. Further, the opinion of the Commission must indicate that due reading and examination *1269 has taken place. The Commission's opinion, dated January 29, 1982, does not indicate such an examination. However, because the entire transcript has been lodged with this court, and the issues presented are essentially questions of law, we will consider the case without ordering a remand for further information from the Commission. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
The first issue is whether the Commission properly interpreted Rule 12.2. An administrative agency has the authority to interpret its own rules and such interpretations will become part of the rules. Department of Corrections, Louisiana State Penitentiary v. Cage, 418 So.2d 3 (La.App. 1st Cir.1982), writ application pending, No. 82-C-2411 (La. Sept. 27, 1982); McNeely v. Dept. of Health & Human Resources, 413 So.2d 594 (La.App. 1st Cir.1982), writ denied 415 So.2d 949 (La.1982). Further, civil service rules have the effect of law and should be construed according to the rules of interpretation applicable to legislation in general. Sanders v. Dept. of Health & Human Resources, 388 So.2d 768 (La.1980). One such rule of construction is that courts should interpret statutes in light of their true intent and also to avoid absurd results. Hayes v. Orleans Parish School Board, 256 La. 677, 237 So.2d 681 (1970). In Hayes, the Louisiana Supreme Court stated:
"The object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result. Bradford v. Louisiana Public Service Commission, 189 La. 327, 179 So. 442; See also City of Shreveport v. Gregory, 186 La. 407, 172 So. 435." 237 So.2d at 684, citing Dore v. Tugwell, 228 La. 807, 84 So.2d 199 (1955).
As stated earlier, the Commission found that the intent of the rule was to provide prospective or concurrent notice to employees of their suspension. This policy was stated by the Louisiana Supreme Court in Sanders, supra, as follows:
"The provisions of the state constitution involving the Civil Service, La. Const. art. 10, § 1, et seq., and the rules of the Commission are designed to secure adequate protection to public career employees from political discrimination. They embrace the merit system, and their intent is to preclude favoritism. The purpose of the civil service rules is to guarantee the security and welfare of public service. Louisiana Civil Service League v. Forbes, 258 La. 390, 246 So.2d 800 (1971)." 388 So.2d at 771.
Also, the Commission sought to avoid the absurd result which might occur if an employee worked a partial or complete shift, and was then informed on that date that he had been suspended, and was not going to be paid for the work performed. Therefore, we hold that the Commission's interpretation of Rule 12.2 is proper as it assures fair and adequate notice to employees and furthers the policy of guaranteeing the security and welfare of public service.
The second issue is the application of this interpretation to the facts before us. Our review of the record shows the only evidence surrounding the notification to appellee is the testimony of Louis Broussard, which reads in pertinent part:
"Q Did you call Ms. Perry into your office on the morning of May 11th?
A Yes.
Q What was the purpose of calling her into your office?
A To explain to her that I made a recommendation that she be suspended for ten days.
. . . . .
Q What time did you call her in?
A Well she came immediately, right after 8:00. I think as soon as she came to the office I told her to reportto send her to Riverside.
Q What time does she report to work?
A Normally 8:00, you know.
. . . . .
Q So normally she would have been given either an oral or written note *1270 from her supervisor telling her to report to you?
A Not a note, just verbal, you know.
. . . . .
Q And she reports to work at 8:00?
A Yes.
Q Ok, so giving the sequence of facts you have just told me, do you have any indication about what time she got to your office?
A No I don't.
. . . . .
Q Is it reasonable to believe from these facts that it was after 8:00 that she got to your office?
A Yes.
Q How long did your discussion last with her?
A I would say at the most twenty minutes, maybe less.
Q Ok, do you recall what time she left your office?
A No ma'am, I sure don't."
This testimony indicates that appellee was told when she arrived at work, sometime around 8:00, that she was to report to Mr. Broussard. She then walked five or six blocks to his office, where she was told of her suspension. There is no evidence to show that appellee did any work before receiving said notice. A similar situation existed in Broussard v. Department of Corrections, Etc., 405 So.2d 1219 (La.App. 1st Cir.1981), where an employee challenged the sufficiency of her suspension notice. Although the employee had exhausted her sick leave, she continued to be absent from work. When she finally returned to work, she was informed of her suspension, effective as of the date of her return. The employee was subsequently discharged. We found that the appointing authority had complied with Rule 12.2 by informing the employee of her suspension on the date of her return. Again, there was no indication in Broussard, that the employee performed work on the day she received notice. Under the present facts, we conclude that appellee received concurrent notice of her suspension, and that the appointing authority complied with the requirements of Rule 12.2.
Accordingly, we reverse the decision of the Commission, insofar as it ordered the Department to pay appellee for the period of her suspension, and further order that all details of this disciplinary action be returned to appellee's personal folder. We affirm that part of the Commission's decision requiring that notice of a suspension be prospective or concurrent. Costs are taxed to appellee.
AFFIRMED IN PART; REVERSED IN PART.