444 So.2d 151 (1983)
Marta R. CARBONELL
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Office of Mental Health and Substance Abuse.
No. 83 CA 0186.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
Rehearing Denied January 19, 1984.
*152 Antonio L. Carbonell, J.D., New Orleans, for appellant.
E. Michael Harrison, Dept. of Health & Human Resources, Office of the General Counsel, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civil Service Legal Counsel, Dept. of State Civil Service, Baton Rouge, for Herbert L. Sumrall, Director of the Dept. of State Civil Service.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is an appeal from a decision of the State Civil Service Commission (Commission) which affirmed the action of the Department of Health and Human Resources (DHHR) terminating a classified employee.

FACTS
We have carefully reviewed the entire record and found that the Commission's opinion accurately sets forth the pertinent general facts of this case. Those facts are as follows:
1. Prior to August 21, 1979, appellant's duty station was the New Orleans Substance Abuse Clinic (hereafter, NOSAC). Her official civil service allocation was Clinical Social Worker V. She functioned as the chief social worker and her duties included a limited social work case load, administering the Spanish speaking program, supervision of the day and evening supervisors, the Spanish personnel and an outreach worker.
2. On August 20, 1979, at 1:30 p.m., appellant was advised by Adrienne Mouledoux, the District Administrator and appellant's immediate supervisor, that funding had been made available for the establishment of a full time out-patient clinic in St. Bernard which clinic would be housed in the St. Bernard Mental Health Clinic. Appellant was advised that she was being made the administrator of the new clinic to be set up and that effective August 21, 1979, her duty station was being changed to St. Bernard.
3. The change in duty station was confirmed in writing and the written notice was delivered to appellant's office mail box at 4:00 p.m. on August 20, 1979. Appellant admitted that she received the memorandum on August 20, 1979 around 4:00 p.m. The written memorandum specifically advised appellant that her duty station was being changed effective August 21, 1979, and that she was to set aside time at 9:00 a.m. on August 21, 1979, "to discuss physical needs, community contacts, time schedules, etc." No specific location was stated for the meeting.
4. Ms. Mouledoux's intentions were that appellant meet with the St. Bernard Administrator for an hour on August 21, 1979, and thereafter meet with Charlotte Evans (the Jefferson Substance Abuse Clinic Administrator who had established the St. Bernard Clinic on an out-reach basis), Rita Raymond (a nurse at the St. Bernard Clinic) and herself at St. Bernard at 9:00 a.m. However, this information was not conveyed to appellant.
5. On August 21, 1979, appellant did not report to St. Bernard at 8:00 a.m., but went to the EEOC [Equal Employment Opportunity Commission] instead. At approximately 8:30 a.m., Ms. Mouledoux, (who was in her office at NOSAC with Charlotte Evans preparing to drive to St. Bernard) called the Administrator at the St. Bernard Mental Health Clinic who advised Ms. Mouledoux that appellant was not there. For this reason, Ms. Evans and Ms. Mouledoux did not drive to St. Bernard for the scheduled 9:00 *153 a.m. meeting, but waited at NOSAC to see what appellant was going to do.
6. At 9:00 a.m. on August 21, 1979, appellant arrived at NOSAC, so the meeting was held at NOSAC (although Ms. Raymond was not in attendance as originally planned.) During this meeting, appellant stated that she believed the change in duty station was illegal and retaliatory. Ms. Mouledoux advised appellant to respond in writing whether she was accepting or refusing the assignment.
7. At 4:00 p.m. on August 21, 1979, appellant delivered to Ms. Mouledoux a written response wherein appellant stated that she considered the transfer to St. Bernard to be retaliatory and illegal. Appellant advised that she was "herewith declining the assignment and taking the proper legal action."
8. Appellant did not report to St. Bernard on the morning of August 22, 1979. Shortly before 10:30 a.m., Ms. Mouledoux telephoned Cal Bankston to report that appellant had refused the assignment and had not reported to St. Bernard that day. At 10:30 a.m., Mr. Bankston verbally suspended appellant for three working days. He also ordered appellant to report for duty at St. Bernard on August 27, 1979.
9. The letter of suspension dated August 22, 1979, which appellant admitted she received on August 24, 1979, specifically instructed appellant to report to St. Bernard at 10:30 a.m. on August 27, 1979. Appellant admitted that as of this time she knew her duty station was to be in St. Bernard.
10. On August 27, 1979, at 7:30 a.m., appellant's husband delivered to Ms. Mouledoux at home a copy of a letter dated August 26, 1979, addressed to Cal Bankston, wherein appellant advised that she considered her transfer to the nonexistent St. Bernard Substance Abuse Clinic arbitrary, illegal, abusive and in retaliation for charges she had filed with the EEOC. Appellant advised that on August 27, 1979, at 10:30 a.m. she would report to the New Orleans Substance Abuse Clinic, which she deemed to be her only legal and official duty station.
11. At 10:30 a.m. on August 27, 1979, appellant again did not report to St. Bernard but reported to NOSAC instead. Mr. Bankston was there when she arrived; he asked appellant if she understood the seriousness of her refusal and again ordered appellant to report to St. Bernard. Appellant responded that she considered the order illegal and retaliatory and that she declined to comply with the order. At 3:30 p.m. on August 27, 1979, appellant was handed her letter of removal.
12. Appellant contends that she did not violate the August 20, 1979, memorandum because she understood that she had been given twenty-four hours in which to consider whether she would accept or refuse the assignment and therefore was not expected to have reported to St. Bernard at 8:00 a.m. on August 21, 1979. Appellant also contends that the memorandum did not specify a place for the meeting scheduled for August 21, 1979, at 9:00 a.m. and that she actually attended the meeting which was held at NOSAC. Appellant also contends that there was a difference between changing her duty station to St. Bernard and instructing her to report to St. Bernard and appellant argues that the August 20, 1979, memorandum did not specifically instruct her to report to St. Bernard on August 21, 1979.
13. The parties stipulated that Carolyn Kitchin, M.D., Assistant Secretary of the Office of Mental Health and Substance Abuse, had delegated appointing authority to Cal Bankston for employees in the Division of Substance Abuse.
14. Mr. Bankston and Ms. Mouledoux discussed appellant's change in duty station and Mr. Bankston specifically authorized and instructed Ms. Mouledoux to assign appellant to St. Bernard. The decision was made around August 17, 1979.
15. At the time appellant was assigned to St. Bernard, there was to be no change in her allocation or pay. As of August 21, 1979, when appellant was assigned to serve as the administrative *154 head for the new clinic to be established, her new duties would still have warranted a civil service allocation of Clinical Social Worker V. The personnel action was going to be reported to the Director of the Department of State Civil Service as a change in duty station; however, when appellant advised that she would not comply with the instruction to go to St. Bernard, the change in duty station was not processed and the termination papers were processed instead.
16. Appellant was primarily assigned to set up the St. Bernard Substance Abuse Clinic because she had the administrative, personnel and social work experience that would have enabled her to get the new program started as expeditiously as possible. Her refusal to accept the change in duty station delayed the opening of the new clinic and forced several other people to assume additional responsibilities.

CONSTITUTIONALITY OF THE COMMISSION'S METHOD OF REVIEWING THE RECORD

(Assignment of Error 10)
The appellant contends that the record does not reflect that the Commission properly reviewed all of the evidence in the case as required by La. Const. of 1974, art. X, § 12 then in effect.[1] In particular, the appellant asserts that the evidence was received by a referee appointed by the Commission and that the record does not contain a report from the referee or reflect that the individual members of the Commission heard the taped transcription of the testimony. The appellant cites as authority Wells v. Department of Corrections, Louisiana State Penitentiary, 417 So.2d 377 (La.App. 1st Cir.1982), writ denied, 420 So.2d 983 (La.1982), wherein this court held that the Louisiana Constitution required that the Commission must review the record of appeal, that mere access to the record is not sufficient and that the Commission's opinion must reflect that a proper examination of the record has taken place. The appellant then maintains that if the Commission did not follow the proper constitutional procedure in rendering its opinion that this court is not bound by the Commission's conclusions and has the "power to render a decision based on the record of appeal...".
The Commission's opinion contains the following statement:
A public hearing was held in New Orleans before a referee appointed by the Commission. Testimony was taken on August 11 through 13, 1980; April 20 through 24, 1981, May 26 through 29, 1981; and June 8 and 9, 1981. The sound recordings of the proceedings, the documents offered into evidence and the record have been furnished to the Commission for its consideration, from which it makes the following findings.
This statement is ambivalent. It is arguable that it does not stand for the proposition that the members of the Commission properly examined the record (heard the taped testimony) before arriving at an opinion as required by Wells. However, in two cases decided by us subsequent to Wells, we cited Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975) and decided the cases instead of remanding even though the opinion of the Commission did not indicate that the members of the Commission properly examined the evidence. Wollerson v. Department of Agriculture, 436 So.2d 1241 (La.App. 1st Cir.1983); Department of Health and Human Resources, Office of Family Security v. Perry, 423 So.2d 1266 (La.App. 1st Cir.1982). In both of those cases, the entire record was before us as it is in the instant case. We shall follow the precedent set by Wollerson and Perry in this case.

THE DISCIPLINARY ACTIONS
(Assignments of Error 1, 2, 3, 4, 7, 8 and 9)
The appellant contends that her transfer from the New Orleans office to *155 the St. Bernard office was illegal and in retaliation for charges that she filed with the EEOC. She further contends that since the order transferring her was illegal that she could not be required to obey it and cannot be lawfully disciplined for disobeying an illegal order.
La. Const. of 1974, art. X, § 8(A) provides as follows:
Disciplinary Actions. No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission. The burden of proof on appeal, as to the facts, shall be on the appointing authority.
Cause has been defined in the jurisprudence as conduct which impairs the efficiency of the public service and bears a real and substantial relation to the efficient and orderly operation of the public service in which the employee is engaged. Williams v. Department of Public Safety, Office of State Police, 415 So.2d 543 (La.App. 1st Cir.1982); Department of Public Safety, Office of State Police v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981), writ denied, 406 So.2d 626 (La.1981); Sanders v. Department of Health and Human Resources, 394 So.2d 629 (La.App. 1st Cir. 1980), writ denied, 399 So.2d 602 (La.1981). A decision by the Commission is subject to review by this court on "any question of law or fact". La. Const. of 1974, art. X, § 12. Where the evidence in a disciplinary action is received by a referee and the Commission does not see or hear the witnesses, the standard for appellate review of facts utilized by this court is not that set forth in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and Canter v. Koehring Company, 283 So.2d 716 (La.1973). When the Commission only reviews transcripts or listens to taped testimony, its ability to assess the weight of the evidence is no different from that of an appellate court. In such a situation, a less restrictive standard of appellate review of facts is applicable and we must determine only the sufficiency and the preponderance of the evidence. Wollerson, 436 So.2d at 1243-1244. Cf. F & S Offshore, Inc. v. Service Machine & Shipbuilding Corporation, 430 So.2d 1167 (La.App. 1st Cir.1983).
The Commission reached the following conclusions on the allegations of the appellant concerning the disciplinary actions:
In her request for appeal, appellant alleges that she was transferred without compliance with Civil Service Rule 8.15. The Commission concludes that appellant was not transferred because, by definition, a "transfer" is "the change of an employee from a position in one department to a position in another department without change in probational or permanent status and without a break in service of one or more working days." (Civil Service Rule 1.4.1) Appellant remained within the same department (Department of Health and Human Resources) and even within the same office thereof (the Office of Mental Health and Substance Abuse). Because this action was not a transfer, Civil Service Rule 8.15 could not have been violated since it was not applicable.
Appellant also alleges that she was reassigned without compliance with Civil Service Rule 8.16(a). "Reassignment" is defined as the "change within the same department of a probationary or permanent employee from a position in one class to another position in a different class, both classes of which have the same minimum rate of pay". (Civil Service Rule 1.33). Appellant was to be changed from a Clinical Social Worker V in the NOSAC to a Clinical Social Worker V in the St. Bernard SAC. This personnel action was not a reassignment because appellant's class of position was to have remained unchanged. Therefore Civil Service Rule 8.16(a) is inapplicable. The Commission concludes that the personnel action involved was to have been a change in duty station. Civil Service Rule 8.16(c) specifies: "An appointing authority may change the duty station of *156 a permanent employee from one geographical area to another and any such change shall be reported to the Director [of the Department of Civil Service]...." A change in duty station is at the discretion of the appointing authority. The only formality required is that it must be reported to the Director, but the Rule does not require that the Director be notified prior to the change in duty station. The Director does not have to approve a change in duty station; he merely records it. In this case, the change in duty station was never reported to the Director because the appointing authority became aware that appellant's duty station was not going to be changed since appellant refused to go. To have reported the change under these circumstances would have been pointless.
The Commission also concludes that the change in duty station was taken by the proper appointing authority. "Appointing authority" is defined as "... the agency, department, board or commission, and the officers and employees thereof authorized by statute or by lawfully delegated authority to make appointments to positions in State service." (Civil Service Rule 1.4). In this case, Dr. Kitchin, the Assistant Secretary of the Office of Mental Health and Substance Abuse, was the statutory appointing authority (La.R.S. 36:258), and she lawfully delegated this authority to Mr. Bankston, who in turn lawfully delegated his authority to Ms. Mouledoux to instruct appellant to report to St. Bernard. For these reasons, the Commission concludes that there was no violation of any Civil Service Rule in connection with appellant's change in duty station.
Appellant argues that she could not be moved to any parish outside of Orleans Parish because she had restricted her employment availability to Orleans Parish on her job application and therefore, this was a condition of employment. The Court of Appeal rejected an identical argument raised in connection with a similar change in duty station. Bayhi v. Department of Health and Human Resources, 408 So.2d 395 (La.App. 1st Cir. 1981).
Appellant also argues that there was no legal cause for the suspension and termination. The Commission concludes that the appellee has borne its burden of proving that appellant refused to comply with an order to change her duty station. The Department of Health and Human Resources is charged with, among other responsibilities, providing health care services to the citizens of this state. In order to fulfill this responsibility, the officials at the Department of Health and Human Resources must be given the flexibility to assign employees where, in the officials' judgment, their services are most needed and Civil Service Rule 8.16 specifically grants these officials this authority. An employee may not prevent an agency from fulfilling its responsibility (in this case to establish a new clinic) by refusing to comply with a change in duty station. For this reason, the Commission concludes that there was legal cause for appellant's suspension and termination.
We have reviewed the record and the applicable law and find that the conclusions of the Commission are correct.
These assignments of error are without merit.

THE DISCRIMINATION CLAIM

(Assignments of Error 5 and 6)
The appellant contends that the disciplinary action taken against her was the result of discrimination against her because of her Hispanic national origin and because she filed several complaints with EEOC.
La. Const. of 1974, art. X, § 8(B) provides as follows:
Discrimination. No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission.

*157 The burden of proof on appeal, as to the facts, shall be on the employee.
Pursuant to Rule 13.10(a) and (h) of the Commission, a person in the classified service may appeal to the Commission when he alleges that he has been discriminated against or subjected to any disciplinary action because of his political or religious beliefs, sex, race or discrimination as defined in Rule 1.14.1. Rule 1.14.1 defines discrimination as the "consideration of religious or political beliefs, sex, race, or any other non-merit factors." In an appeal to the Commission, the employee has the burden of proving discrimination. Sanders, 394 So.2d at 632.
The appellant alleged acts of discrimination commencing in 1976 and continuing until her termination. Extensive evidence was taken on the allegations of discrimination and the Commission's opinion analyzed this evidence in great detail. This extensive analysis is attached to our opinion as unpublished Appendix No. 1. The Commission reached the following conclusions on the discrimination claim:
Had there have been no allegations of discrimination, appellant's termination would have clearly been justified. However, appellant has proved certain charges of harassment. The preponderance of the evidence is to the effect that the Division of Substance Abuse was not retaliating against appellant or harassing her, but rather that there was a disruptive conflict between appellant and Ms. Mouledoux.
This appeal presents a situation that is by no means one-sided. Some of the agency's actions were completely justified. On the other hand, some of the agency's actions, appellant brought upon herself. The Commission concludes that the crux of this matter is the open hostility between Ms. Mouledoux and appellant. Put succinctly, the agency could no longer continue to function with these two employees in the same clinic. Every effort to resolve their differences failed. Therefore, the agency was forced to make a drastic decision. Mr. Bankston made this decision around August 17, 1979, when he finally realized that the conflict could no longer be endured. Mr. Bankston candidly admitted that sometimes employees who cannot accept supervision make good leaders. With the assignment of appellant to St. Bernard, Mr. Bankston would have solved two problems: he would have separated Ms. Mouledoux and appellant and the St. Bernard Clinic would be established and administered by the employee who was best qualified to assume these responsibilities. Appellant's refusal to comply with the order to go to St. Bernard completely deprived Mr. Bankston of an acceptable solution to this problem. When appellant refused to go to St. Bernard, Mr. Bankston had two choicesto attempt to resolve the differences between Ms. Mouledoux and appellant in some other fashion or to terminate appellant. The Commission concludes that Mr. Bankston's choice to terminate appellant was reasonable under the circumstances presented herein.
A personality conflict between two employees does not support termination unless the personality conflict results in impairment of the efficiency of the public service being rendered. Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422 (1958). The Commission concludes in this case, that the efficiency of the public service was severely impaired.
Appellant alleges that the agency was trying to get rid of her at any cost. The Commission observes that if this were the intent of the agency, appellant's termination could have been accomplished relatively easily in November 1978. Appellant had exhausted her sick leave, was disabled from performing the duties of her position and those duties were such that the agency needed them performed without further interruption. Thus, appellant could have been terminated under the provisions of Civil Service Rule 12.10. This, the agency did not do, but rather, went out of its way to accommodate appellant.

*158 Appellant was given a direct order from her superiors. The order was not illegal, immoral or in dereliction of appellant's duties. Therefore, appellant was bound to follow that order. However, appellant did not follow the order, but took it upon herself to interpret the Civil Service Rules, concluded that the order was illegal and refused to comply. She should have complied with the order and therefore utilized the appropriate remedies available to her. Cage v. Department of Corrections,[[2]] 418 So.2d 3 (La.App. 1st Cir. 1982).
We have carefully examined the entire record and, after applying the appropriate standard for factual review and the applicable law, have determined that the Commission's rulings are correct. The appellant failed to prove that the disciplinary action taken against her was the product of discrimination.
These assignments of error are without merit.
CONSTITUTIONALITY OF RULE 8.16(c)

(Assignment of Error 11)
Rule 8.16(c) of the Commission provides as follows:
Change in Duty Station.
An appointing authority may change the duty station of a permanent employee from one geographical area to another and any such change shall be reported to the Director; and may change the duty station of a provisional or probationary employee from one geographical area to another with the prior approval of the Director.
The appellant contends that Rule 8.16(c) discriminates against permanent employees by requiring the prior approval of the Director of the Department of Civil Service to change the duty station of a provisional or probationary employee but not requiring such for a change in duty station of a permanent employee. Appellant contends there is no rational basis for this distinction and it is a violation of the equal protection provisions of the constitutions of Louisiana and the United States.
The law applicable to such a claim is accurately set forth in Williams v. Lallie Kemp Charity Hospital, 428 So.2d 1000, 1009-1010 (La.App. 1st Cir.1983), writ denied, 434 So.2d 1093 (La.1983), as follows:
The Louisiana and federal constitutions both require equal protection of the laws. U.S. Const. Amend. XIV; La. Const. art. I, § 3. When a claim is made that a law violates these provisions, and the claimant belongs to a class receiving disparate treatment, a determination must be made as to whether the law impinges on a "fundamental right" or operates to the disadvantage of some "suspect class." If the law does either of the above, it will be subject to strict scrutiny and be declared invalid unless it is shown that a "compelling governmental interest" exists; if neither a suspect class nor a fundamental right is involved, the test is whether the discriminatory treatment is supported by any rational basis reasonably related to the governmental interest sought to be advanced by it.
. . . . .
Suspect classes are those so recognized by the Supreme Court, and they involve classifications based on race, alienage, national origin, or some other attribute held by discrete and insular minorities.
. . . . .
The number of fundamental rights is likewise finite. Those that have been recognized include free speech, voting, interstate travel, fairness in the criminal process, fairness in procedures concerning governmental deprivations of life, liberty or property, and privacy.
Permanent, provisional and probationary employees are not suspect classes recognized by the jurisprudence and there is no fundamental right for a civil service *159 employee to have the Director of the Department of Civil Service approve his change in duty station. Since the appellant's claim of unequal treatment does not involve a fundamental right or a suspect class, we must only determine if such treatment is supported by any rational basis reasonably related to a governmental interest.
The reasons for Rule 8.16(c) are set forth in the brief of the Commission filed in this court as follows:
It appears that the reason for such a distinction is to avoid giving an appointing authority an opportunity for circumventing the Civil Service Rules regarding certification for employment by the Department of State Civil Service of those applicants for employment within the State Civil Service. That is, before an appointing authority may place an applicant in a position within the State classified service he must obtain from the Department of State Civil Service a Certificate of Eligibles ranking those individuals by test score who have applied for employment for a particular position in the geographical area requested by the appointing authority. The appointing authority must choose their new employee from among the top five grade groups on that list. In metropolitan areas such as Baton Rouge and New Orleans, as well as others, the competition for a great many positions is keen due to the number of applicants such that a higher score than is required in a less urban area in which the competition is not so keen is necessary to be included within the top five grade groups. It was found that appointing authorities would circumvent Civil Service Rules by requesting a certificate for a position in a rural area after alerting the individual they desired to hire to submit an application for employment in that area. The applicant then had a much greater opportunity to be included within the top five grade groups for that geographical area such that the appointing authority could then choose that individual. There is, of course, a six month probationary period required by Civil Service Rule 9.1 before obtaining permanent status in the classified service. Following that appointment in the rural area the appointing authority could then change the duty station of that employee to the more urban area where the need for the work to be performed actually existed. Unfortunately, appointing authorities were found to have engaged in this practice such that Civil Service Rule 8.16(c) now reads as it does. The decision by the State Civil Service Commission not to require an appointing authority to justify to the Director of the Department of Civil Service before he changed the duty station of a permanent employee was an attempt to avoid interfering with managerial prerogative in mission accomplishment. Should such an employee be aggrieved by a change in duty station, that employee would have a right to contest the decision to change his duty station by perfecting an appeal alleging discrimination, which, in accordance with Civil Service Rule 1.14.1 includes a consideration of "religious or political beliefs, sex, race, or any other non-merit factor."
These reasons (which we adopt as our own) show that Rule 8.16(c) has a rational basis reasonably related to a governmental interest. Rule 8.16(c) is constitutional.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the decision of the Commission is affirmed. Appellant is to pay all costs.
AFFIRMED.
NOTES
[1] The opinion of the Commission was filed on September 15, 1982. La. Const. of 1974, art. X, § 12 was amended by Act 883 of 1982, approved by the people of Louisiana on September 11, 1982, and became effective on October 15, 1982.
[2] Department of Corrections, Louisiana State Penitentiary v. Cage, 418 So.2d 3 (La.App. 1st Cir.1982), writ denied 422 So.2d 164 (La.1982).