608 So.2d 1051 (1992)
Jewel Earl RAVENCRAFT, Jr.
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, Dixon Correctional Institute.
Nos. CA 91 1278, CA 91 1279.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Writ Denied December 21, 1992.
Mark E. Falcon, Avant & Falcon, Baton Rouge, for Jewel E. Ravencraft, appellant.
Victoria F. Suplee, Dept. of Public Safety & Corrections, Baton Rouge, for the Dept. of Public Safety and Corrections.
Robert R. Boland, Jr., Civ. Service General Counsel, Dept. of State Civ. Service, Baton Rouge, for Herbert L. Sumrall, Director, Dept. of State Civ. Service.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
*1052 WHIPPLE, Judge.
This is an appeal from a decision of the State Civil Service Commission upholding the termination of the employment of Jewel Earl Ravencraft, Jr. as a Corrections Sergeant with the Department of Public Safety and Corrections, Dixon Correctional Institute, for being on duty with a noticeable odor of alcohol on his breath. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Ravencraft was first employed by the Department of Public Safety and Corrections, Dixon Correctional Institute, on September 18, 1987, at which time he received a copy of the "Employee Rules and Disciplinary Procedures" booklet. Also on that date, he signed a statement indicating receipt of the booklet and acknowledging that he was responsible for familiarizing himself with its rules and contents. On May 31, 1990, Ravencraft was serving with permanent status as a Corrections Sergeant when he was verbally suspended from his position pending an investigation of alleged misconduct.
Prior to any further action being taken against him, Ravencraft filed a request for an appeal of his verbal suspension by letter dated June 25, 1990. This request for appeal was filed with the Commission on June 27, 1990, and designated as Civil Service Commission Docket Number 8684.
By letter dated July 30, 1990, over the signature of Bruce N. Lynn, Secretary of the Department of Public Safety and Corrections, appellant was notified that he would be terminated from his position as Corrections Sergeant, effective August 7, 1990. The letter notes the following as cause for this action:
On the evening of May 31, 1990, you were present at a meeting conducted by Assistant Warden Donald McNeal and Colonel Tommy Tubbs with the seafood plant workers. After the inmates had been escorted from the meeting, Colonel Tubbs noted that he had smelled a strong odor of alcohol in the room. All the officers present for the meeting were ordered to the Unit II's [sic] Captain's Office. At approximately 6:30 p.m., Colonel Tubbs, Lt. Martin Allen and Captain Arthur-Clyde Brabham smelled each officer's breath; you were found to have a strong odor of alcohol on your breath. By your actions, you violated Corrections Services Employee Rules and Procedures # 11, requiring that no employee may report for or be on duty when the odor or effects of alcohol or other intoxicants are noticeable.
On August 28, 1990, Ravencraft, through counsel, filed a Petition of Appeal with the Commission in which he denied the allegations contained in the letter of termination and contended his removal from service was based upon insufficient cause. He also alleged that the allegations of fact against him were fabricated and that the penalty imposed was too severe and failed to comply with the penalty schedule set forth in the "Employee Rules and Disciplinary Procedures" booklet.[2] This counseled appeal was designated as Civil Service Commission Docket Number S-8811. Thereafter, both administrative appeals were consolidated and assigned to a referee for hearing and decision.
In a decision dated February 7, 1991, the referee made numerous findings of fact and concluded that the appointing authority had carried its burden of proving that appellant had the odor of alcohol on his breath at the time in question. However, the referee reduced the penalty imposed from termination of employment to a five-day suspension. In his decision, the referee reasoned:
Due to the sensitive nature of appellant's job, the Referee recognizes that it is unacceptable for a corrections officer to smell of alcohol while coming into contact with inmates. Such conduct may diminish respect for the officer as well as *1053 to [sic] possibly encourage inmates to engage in misconduct if they believe the office [sic] is intoxicated or not fully alert. The Referee concludes that reporting for duty in a correctional institution with the odor of alcohol on one's person does constitute cause for disciplinary action. However, the Referee is under a duty to review the severity of the disciplinary action imposed.
A review of the Corrections Services Employee Rules and Procedures manual reflects that Rule # 11 prohibits an employee from being on duty when the odor or effects of alcohol are noticeable. The rule book further designates violation of Rule # 11 as a Schedule III offense, the only penalty for which is termination [from service].
The present appeal deals strictly with the charge that appellant had the odor of alcohol on his person. Appellee conceded that appellant had no visual effects of alcohol or appeared to be impaired in any way while on duty. The Referee, as stated earlier, recognizes that the odor of alcohol is unacceptable on a Corrections Officer, however, in the absence of any noticeable effects of alcohol or any signs of impairment, termination is too severe. The Referee concludes that in the absence of any prior disciplinary action, appellant's conduct in this case warrants a suspension of five working days. [emphasis in original]
Ravencraft and the Department of Public Safety and Corrections each filed an application for review of the referee's decision by the Commission as provided by Civil Service Rule 13.36. In an opinion dated April 8, 1991, the Commission denied Ravencraft's application for review but granted the Department's application.[3] The Commission reversed the referee's decision, and reinstated the penalty originally imposed, finding there was cause for Ravencraft's termination.
The Commission also acknowledged that pursuant to a recent amendment to Civil Service Rule 13.36, the Commission was rendering its decision without first reviewing a transcript or sound recording of the proceedings before the referee because the reversal of the referee's decision was based on an issue of law.
Ravencraft now appeals to this court, urging the following specifications of error:
1. The Commission erred in rendering its decision without reviewing the testimony and evidence adduced at trial [the hearing before the referee].
2. Civil Service Rule 13.36, as amended, which allows the Commission to modify a [referee's] decision without review of the evidence, is unconstitutional.
3. The Commission erred in finding "cause" sufficient to warrant disciplinary action.
4. Alternatively, the Commission erred in failing to reduce the penalty to one less severe.
5. The Commission erred in failing to award reasonable attorney's fees.

SPECIFICATIONS OF ERROR NUMBERS ONE AND TWO
Ravencraft contends the Commission erred in rendering its decision without reviewing the testimony and evidence adduced at trial (the hearing before the referee) and that Civil Service Rule 13.36, as amended, which allows the Commission to reverse or modify a referee's decision without first reviewing the evidence, is unconstitutional. He argues that the clear language of Article X, Section 12(A) of the Louisiana Constitution and Schneider v. Department of Health and Hospitals, 552 So.2d 796 (La.App. 1st Cir.1989), require that, to afford any meaningful review of a referee's decision, the Commission must first read or listen to the testimony taken before the referee.
Under La. Const. art. X, § 12(A), the State Civil Service Commission has the exclusive power and authority to hear and *1054 decide all removal and disciplinary cases. However, art. X, § 12(A) also provides that the Commission may appoint a referee to take testimony, hear, and decide such cases. Upon the filing of a timely application for review with the Commission, the decision of a referee is subject to review by the Commission on any question of law or fact; and the lack of a timely application for review or the denial of an application for review results in the decision of the referee becoming the final decision of the Commission. La. Const. art. X, § 12(A); Civil Service Rule 13.36(g). Further, the final decision of the Commission is subject to review by the court of appeal on any question of law or fact. La. Const. art. X, § 12(A).
Prior to the amendment of art. X, § 12(A) by Act 883 of 1982, referees lacked the power to decide cases and could only take testimony and make recommendations.[4] Various cases interpreting art. X, § 12(A) prior to its amendment held that members of the Commission were required to read and examine a transcript of the testimony as made up before the referee before arriving at an opinion or determination, and that the opinion of the Commission must indicate that such a reading and examination had occurred.[5]
As noted above, La. Const. art. X, § 12(A), as amended in 1982, allows the Commission to appoint a referee to hear and decide cases. Because referees now possess decision-making authority, those cases interpreting art. X, § 12(A) prior to its amendment are no longer applicable. See Fisher v. Department of Social Services, Office of Community Services, 600 So.2d 1368, 1372 (La.App. 1st Cir.1992). Also, Civil Service Rule 13.36(g) previously required members of the Commission to listen to pertinent portions of the sound recording of a proceeding conducted before a referee before taking any action in cases where it had granted an application for review of the referee's decision. See Schneider, 552 So.2d at 798.
In Fisher, the Commission denied an application for review of a referee's decision which had denied an administrative appeal for failure to allege sufficient factual specificity in an age discrimination case. This Court reversed in part, and remanded, concluding that appellant had pleaded discrimination with sufficient factual specificity. We further held that in denying an application for review of a referee's decision under Civil Service Rule 13.36, the Commission is not required to read and examine the transcript of the hearing before the referee. Fisher, 600 So.2d at 1373.
Subsection (b)(5) of Civil Service Rule 13.36 previously allowed appellants to designate the transcript or sound recording of the proceedings before the referee as a "document" for the purposes of Rule 13.36(f), which previously required the Commission to review every timely application for review of the referee's decision, including any documents specified by the appellant to be submitted with the application for review. See Fisher, 600 So.2d at 1372; Frye v. Louisiana State University Medical Center in New Orleans, 544 So.2d 81 (La.App. 1st Cir.), writs denied, 550 So.2d 652, 655 (La.1989).[6]
In the Frye appeals, appellant specified "a transcript of the entire hearing" as a document under Civil Service Rule 13.36(b)(5). 544 So.2d at 63; 544 So.2d at 82. The Commission denied Frye's applications for review, stating that it had reviewed the *1055 documents specified by him under Civil Service Rule 13.36(b)(5). However, because transcripts had not yet been prepared when the Commission denied Frye's applications, Frye did not receive a complete review as contemplated by Civil Service Rule 13.36 as it then read. Frye, 544 So.2d at 62; Frye, 544 So.2d at 81. Consequently, this court remanded the case in the first appeal; and reversed and remanded in the second appeal.[7]
As previously noted by this Court, however, Civil Service Rule 13.36(b)(5) has been amended to provide that a "transcript of the proceedings before the referee may not be specified as a pleading or exhibit". Fisher, 600 So.2d at 1372.
According to Department of State Civil Service transmittal sheet 294, dated April 3, 1991, the operative version of Rule 13.36 as it pertains to this case provides:
(b) To be effective, an application for review of a referee's decision must:
* * * * * *
5. Specify which pleadings and exhibits offered into evidence are to be submitted to the Commission with the application for review. A transcript of the proceedings before the referee may not be specified as a pleading or exhibit under this rule....
* * * * * *
(f) After consideration of the application for review, along with the pleadings and exhibits specified pursuant to subsection (b)(5) of this Rule, the Commission may:
* * * * * *
3. Reverse or modify the Referee's decision on an issue of law.
4. Affirm the Referee's decision by denying the application for review.
5. Listen to pertinent portions of the sound recordings of the proceedings conducted before the Referee or read and review the transcript of the proceedings before the Referee, and, thereafter, reverse or modify the Referee's decision on an issue of fact, and/or take any of the actions specified in 1 through 4 above.
Civil Service Rule 13.36, in its present form, requires that Commission members listen to a sound recording of the proceedings before the referee, or read and review a transcript of the same, only where the Commission reverses or modifies the referee's decision on an issue of fact.
The language of La. Const. art. X, § 12(A) does not mandate that the Commission review the transcript of the proceedings before the referee in considering an application for review. Nor do we find that the case cited by appellant, Schneider, 552 So.2d at 796, supports appellant's argument. This Court based its holding in Schneider on a previous version of Civil Service Rule 13.36(g), which required that if the Commission granted an application for review of a referee's decision, members of the Commission were required to listen to pertinent portions of the sound recordings of the proceedings conducted before the referee before taking any action in the case. 552 So.2d at 798.
The current version of Rule 13.36, however, no longer contains this requirement, except where the Commission modifies or reverses the decision of a referee on an issue of fact. Adopting appellant's argument, that a factual review by the Commission is mandated in all cases in which an appellant raises factual issues in an application for review of a referee's decision, would effectively deprive referees of their constitutionally provided decision-making authority and would obligate the Commission to hear and decide for itself all disciplinary and removal cases. This would render meaningless the language in La.Const. art. X, § 12(A), which allows the Commission to appoint a referee to hear and decide cases.
While we agree with Ravencraft's argument insofar as a meaningful review in some cases might require the Commission *1056 to review evidence, we do not agree that modification or reversal of a referee's decision on an issue of law necessarily requires such a review. Because neither the Civil Service Rules nor any other applicable laws specifically require that the Commission review testimony under the circumstances present in the instant case, the Commission's action in reversing the referee's decision on an issue of law and in denying Ravencraft's application for review is not erroneous.
Thus, appellant's first and second specifications of error lack merit.

SPECIFICATIONS OF ERROR NUMBERS THREE AND FOUR
Ravencraft next contends the Commission erred in finding sufficient cause to warrant disciplinary action or, alternatively, that it erred in failing to reduce the penalty to one less severe. He argues that the referee either disregarded or gave insufficient weight to the stipulation that six witnesses, if called to testify, would all state that they were in close proximity to him between 3:50 p.m. and 4:20 p.m. on May 31, 1990, and that they did not notice the odor or effects of alcohol on him.
Appellant claims in his brief to this Court that because he did not leave the premises after arriving at 3:37 p.m., it was impossible for him to have had access to any alcohol; therefore, the stipulation required disposition of the appeal in Ravencraft's favor.
In the present case, we have carefully reviewed the entire record, including the transcript of the hearing before the referee, and conclude the referee's factual finding that appellant's breath smelled like alcohol was not manifestly erroneous. The testimony in the record similarly supports the other findings of fact made by the referee.
At the hearing before the referee, Colonel Tommy Tubbs, Lieutenant Martin Allen, and Captain Arthur Brabham each testified unequivocally that they smelled the odor of alcohol on Ravencraft's breath. Colonel Tubbs testified: "They [Ravencraft and two other officers who were also fired] stated that they had ... consumed maybe two cans of beer earlier in the day. I think they indicated that it was around dinner time." On cross examination by counsel for appellant, Colonel Tubbs was asked what Ravencraft admitted, and he replied: "That he [Ravencraft] had had a couple of beers around dinner time, as I recall." During further cross examination, the following exchange took place between Tubbs and appellant's counsel:
Q: Your recollection is that he admitted drinking two beers at noon?
A: That is the best that I can remember.
Ravencraft testified that he had not consumed any alcohol on May 31, 1990. However, in addition to Colonel Tubbs, both Lieutenant Allen and Captain Brabham testified unequivocally that they smelled Ravencraft's breath at approximately 6:30 p.m. on May 31, 1990, and that they noticed the odor of alcohol. Thus, we find no error in the referee's finding that appellant had the odor of alcohol on his breath while on duty.
From the record before us, we are unable to conclude that the referee was manifestly erroneous in his determinations of credibility and findings of fact. Nor do we find that the Commission's action in denying Ravencraft's application for review was arbitrary, capricious or an abuse of discretion.
Ravencraft next contends the appointing authority did not prove that his conduct impaired the efficiency of the public service. He argues that the mere odor of alcohol on his breath, absent any evidence that he would be required to come into such close contact with inmates that they could smell his breath, is insufficient to prove impairment of the efficient operation of the public service in which he was engaged.
An employee who has gained permanent status in the classified civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The burden of proof in a disciplinary action, as to the facts, is on the appointing authority. La. Const. art. X, *1057 § 8(A); Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 113 (La.1984). Cause exists whenever the employee's conduct is detrimental to the efficient and orderly operation of the public service in which he is employed. Greenleaf v. DHH, Metropolitan Developmental Center, 594 So.2d 418, 427 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La. 1992).
The appointing authority is required to prove the existence of cause by a preponderance of the evidence, and such proof is sufficient to constitute a preponderance when, taken as a whole, it shows that the fact to be proven is more probable than not. Sutherland v. Board of Commissioners, 459 So.2d 1282, 1284 (La.App. 1st Cir.1984). A reviewing court should not reverse the Commission's conclusion as to the existence or absence of cause for dismissal unless the decision is arbitrary, capricious or an abuse of the Commission's discretion. Walters, 454 So.2d at 113.
The appointing authority conceded that Ravencraft showed no effects of alcohol consumption other than the odor on his breath. However, as Warden Cain testified, the purpose of the rule prohibiting a correctional officer from having a noticeable odor of alcohol on his person is twofold. The main reason is that even the odor of alcohol on a correctional officer increases the potential for violent acts by prisoners. A secondary reason is the possibility of a lawsuit arising from violence attributable to the consumption of alcohol by officers.
Warden Cain stated that he was already having trouble with the prisoners who worked in the seafood plant, which he labeled "our worst inmates". As he stated: "We can't afford for an officer to come to work with the odor of alcohol on his breath.... When they [prisoners] think you are weak, they are going to take advantage of you. They will get away with all they can."
Colonel Tubbs expressed similar concerns during his testimony. He said the disciplined officers were well aware of the ongoing problems with inmates in this volatile area of the prison and noted that the officers involved in this disciplinary action were aware of the problems and had lodged complaints earlier in the day. Colonel Tubbs also said that Ravencraft's position as a security officer placed him in close proximity to and direct supervision of inmates.
Rule 11 of the "Employee Rules and Disciplinary Procedures" booklet provides in part: "No employee may report for or be on duty when the odor or effects of alcohol or other intoxicants are noticeable." This rule is entitled "Intoxication", and the penalty is designated as Schedule III, for which termination from employment is the penalty.
The Commission's decision to reverse the decision of the referee and to reinstate Ravencraft's termination from employment for cause was not arbitrary, capricious or an abuse of discretion. Thus, the Commission did not err in failing to impose a lesser penalty than that originally imposed by the appointing authority.
Appellant's third and fourth specifications of error also lack merit.
Because we find no merit in the above specifications of error, we pretermit discussion of appellant's fifth specification of error, in which he contends the Commission erred in failing to award reasonable attorney's fees.

DECREE
For the foregoing reasons, we affirm the decision of the State Civil Service Commission, reversing the referee's decision, and reinstating the appointing authority's termination of the employment of appellant, Jewel Earl Ravencraft, Jr., for cause. Costs of this appeal are assessed against appellant.
AFFIRMED.
NOTES
[2] Ravencraft also alleged the disciplinary action was not initiated by the proper appointing authority; that the letter of termination contained insufficient detail and specificity; and that he was denied pre-deprivation notice and a meaningful opportunity to respond. These claims are not part of the appeal to this Court.
[3] Although Ravencraft's application for review shows his first name as "Jewell", we note from his initial appeal in proper person and other documents in the record that the proper spelling of his name is "Jewel".
[4] The effective date of the amendment was October 15, 1982.
[5] Carbonell v. Department of Health and Human Resources, 444 So.2d 151 (La.App. 1st Cir.1983), writ denied, 447 So.2d 1063 (La.1984); Cartwright v. Department of Revenue and Taxation, 442 So.2d 552 (La.App. 1st Cir.1983); Wollerson v. Department of Agriculture, 436 So.2d 1241 (La.App. 1st Cir.), writs denied, 441 So.2d 1221, 1222 (La.1983); Department of Health and Human Resources, Office of Family Security v. Perry, 423 So.2d 1266 (La.App. 1st Cir.1982); Wells v. Department of Corrections, Louisiana State Penitentiary, 417 So.2d 377 (La.App. 1st Cir.), writ denied, 420 So.2d 983 (La.1982).
[6] Frye v. LSU Medical Center in New Orleans, 544 So.2d 62 (La.App. 1st Cir.), writs denied, 550 So.2d 652, 655 (La.1989), was a separate appeal involving the same issue, i.e., whether the Commission erred in failing to review a transcript of the testimony before denying Frye's application for review of the referee's decision.
[7] Frye I involved an appeal of a one-day suspension, and Frye II involved an appeal of an allegedly coerced resignation.