712 So.2d 1028 (1998)
Dennis BURKE
v.
BATON ROUGE METRO AIRPORT.
No. 97 CA 0947.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*1029 Dawn N. Guillot, Baton Rouge, Anthony Marino, Baton Rouge, for Defendant/Appellant Baton Rouge Metro Airport.
Richard P. Bullock, Baton Rouge, Stephanie Knight, Baton Rouge, for Plaintiff/Appellee Dennis Burke.
Before FOIL, WHIPPLE and KUHN, JJ.
WHIPPLE, Judge.
Defendants, the City/Parish of East Baton Rouge through the Baton Rouge Metro Airport, appeal the trial court's decision granting plaintiff's motion for new trial and setting aside the trial court's original decision affirming disciplinary action taken against Officer Dennis Burke. The trial court originally upheld the Baton Rouge City-Parish Personnel Board's finding that the appointing authority's decision to suspend Officer Dennis Burke for five days without pay for leaving the *1030 Baton Rouge Metro Airport premises during his shift was not arbitrary and capricious. After granting Burke's motion for new trial, the trial court reversed its prior decision and set aside the action of the appointing authority.
For the following reasons, we reverse the trial court and reinstate the original judgment affirming the Personnel Board's decision to uphold the appointing authority's decision to impose a five day suspension without pay against Burke.

FACTS AND PROCEDURAL HISTORY
In February of 1995, Officer Dennis Burke was a permanent classified employee of the City of Baton Rouge, assigned to the Baton Rouge Metro Airport. He had served as a Baton Rouge Police officer for over ten years and had been assigned to the airport for over two years. On February 25-26, 1995, Burke, along with Corporal Richard Franklin, Jr., was assigned to work the 9:00 p.m.-5:00 a.m. shift at the airport. During their shift, both Burke and Franklin were supposed to remain on the airport premises, according to airport rules. However, sometime between 1:00 a.m. and 3:00 a.m., Burke abandoned his post and traveled off the airport premises in an official airport police vehicle. After leaving the airport property, Burke traveled to the Bluebonnet area, approximately 13.6 miles from the airport.[1]
Although no emergency situation involving the airport or the nearby prison occurred during Burke's absence, Captain Milton Thomas, the case investigator, eventually recommended to Ira Ledoux, the Director of Aviation, that Burke be suspended without pay for five days. After appropriate notice and a meeting to allow Burke to respond, Ledoux adopted Captain Thomas' recommendation and imposed the suspension without pay.
Burke appealed the decision of the appointing authority to the Baton Rouge City-Parish Personnel Board. On June 13, 1995, the Board conducted a full evidentiary administrative hearing, and unanimously affirmed the decision of the appointing authority, finding that disciplinary action was warranted and that the suspension imposed was appropriate. Burke then filed a petition for judicial review in the district court, which initially affirmed the decision of the appointing authority and the Personnel Board.
However, the trial court subsequently granted Burke's motion for new trial, finding that based on the "applicable jurisprudence, the court is constrained to follow the rule enunciated by the first circuit court of appeal in the Fisher case." Citing Fisher v. DHHR, Office of Human Development, 517 So.2d 318 (La.App. 1st Cir.1987), the trial court reasoned that no disciplinary action could be imposed absent a showing that some emergency or other event had occurred during Burke's absence. Thus, the trial court reversed its prior holding and vacated the decision of the Board, concluding that the appointing authority's disciplinary action was imposed without legal cause.
From this decision, defendants appeal, assigning as error: 1) the trial court's finding that the Personnel Board's decision was arbitrary and capricious and/or without legal cause and 2) the trial court's holding that the employer was required to prove "actual impairment of the efficiency of the public service" to suspend a civil service employee.

DISCUSSION
Louisiana Constitution Article X, § 8(A) provides, in pertinent part: "No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8(A); see Howard v. Housing Authority of New Orleans, 457 So.2d 834, 843 (La.App. 1st Cir. 1984); Jones v. Department of Health and Human Resources, 430 So.2d 1203, 1206 (La. App. 1st Cir.1983).
*1031 Further, the Commission's decision is subject to review on any question of law or fact upon appeal to the court of appeal. La. Const. art. X, § 12(B); Walters v. Dept. of Police of New Orleans, 454 So.2d 106, 113 (La.1984). The standard of review for the appellate court is multifaceted. Historically, when reviewing the Commission's findings of fact, the appellate court is required to apply the manifestly erroneous or clearly wrong standard of review. Walters, 454 So.2d at 113; Khosravanipour v. Department of Transportation and Development, 93-2041, 93-2042, 93-2043, 93-2044, 93-2045, p. 7 (La. App. 1st Cir. 10/7/94); 644 So.2d 823, 826, writ denied, 94-2729 (La.1/6/95); 648 So.2d 930. In evaluating whether the Board's determination as to whether the disciplinary action taken by the Board is based on legal cause and commensurate with the infraction, this court may not modify the Board's order unless it is arbitrary and capricious, as set forth in the Administrative Procedure Act. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96); 666 So.2d 641, 647; Walters, 454 So.2d at 113; Khosravanipour, 93-2041, 93-2042, 93-2043, 93-2044, 93-2045 at p. 7; 644 So.2d at 826-827; Howard, 457 So.2d at 846.
A motion for new trial should be granted when the judgment is clearly contrary to the law and evidence and, in any case, if there is good ground therefor. LSA-C.C.P. arts.1972 and 1973. Louisiana jurisprudence is clear that a new trial should be ordered when the trial court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. Bush v. Cannata's Supermarket, Inc., 612 So.2d 794, 797 (La. App. 1st Cir.1992). The granting or denying of a motion for new trial rests within the wide discretion of the trial court, and its determination should not be disturbed absent a clear abuse of discretion. Hogan v. State Farm Auto Ins. Co., 94-0004, p. 9 (La.App. 1st Cir. 12/22/94); 649 So.2d 45, 51; writ denied, 95-0215 (La.3/17/95); 651 So.2d 276, 277.

Disciplinary Action and the Need for Actual Impairment
A conclusion of a public body is "capricious" when the conclusion has no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Coliseum Square Association v. City of New Orleans, 544 So.2d 351, 360 (La.1989).
The evidence presented at the hearing before the Personnel Board clearly supports the factual finding that Burke left the premises while on duty on the night of February 25, 1995. Captain Thomas, the Baton Rouge Airport Police Officer in charge of the police and airport rescue unit, testified that Burke's position included security and fire fighting duties. Burke's position also involved law enforcement and prison escape emergency implementation duties. Thomas received information prompting the investigation. He called a meeting on March 2, 1995, which included Burke, Sergeant Gilbert Leachman of the Airport Police, Corporal Franklin, the officer in charge of the night shift on February 25, 1995, and Sergeant Jeff Smith of the Baton Rouge Metro Airport. All attendees of this meeting, including Burke himself, testified that Burke finally admitted to leaving the airport premises during his shift on February 25.
Burke also admitted to Director Ledoux that he had left the premises while on duty, without notification to or permission from his supervisors. The only reasons Burke gave for leaving the airport property in the security vehicle were that he wanted to blow the soot out of the police unit and he decided to get a newspaper. Leachman, Franklin, and Burke all testified that they were aware that they were not to leave airport premises unless sent off or called off, and that any unauthorized absence would be a violation of established security policy.
Thomas testified that he made the recommendation of suspension without pay because of the airport impact of Burke's actions on the airport's security mission. According to Thomas, the airport is subject to and must strictly abide by FAA-approved regulations requiring that certain security and fire fighting personnel be available at all times in the *1032 interest of public safety. He stated that while traveling in the area of Bluebonnet and Interstate 12, Burke would not have been able to respond timely to any emergency incident at the airport, such as if an intruder had broken into the airport or an aircraft or if any aircraft, which arrive all night, had developed a fire or other emergency.
Director Ledoux testified that he felt the absence from duty was so serious that he would have terminated Burke's employment, but for Thomas' recommendation of merely a five day suspension without pay. He felt the disciplinary action was appropriate and warranted in view of the airport security plan under which employees operated and the additional risks posed by the adjoining prison.
After carefully considering the testimony and record herein, we must conclude that the trial court abused its discretion in granting Burke's motion for new trial and reversing the decision of the Personnel Board. On review, we find that the trial court erred in its interpretation of Fisher as requiring a showing of a particular incident or emergency to establish impairment of the public service.
Based on the precarious situation in which Burke's absence left the airport, the Board agreed with the appointing authority that Burke had abandoned his post, to the impairment of the public service, and that disciplinary action was warranted. We agree.
A classified employee may be disciplined when there is a real and substantial relationship between that employee's improper conduct and the efficient operation of the public service, and the conduct in fact impairs that operation. Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983).
In support of his motion for new trial, Burke argued that there must be actual impairment of the public service caused by the conduct of the employee and not merely a potential impairment. Burke argued, and the trial court agreed, that absence from work without a showing of some detrimental incident or emergency during the absence would not constitute impairment to the efficient operation of the public service for which disciplinary action could be taken. The trial court, relying upon Fisher, concluded that there must be more than absence from work to demonstrate impairment of the public service. Citing Fisher, the trial court concluded that earlier jurisprudence was inapplicable and that the action of the Personnel Board was arbitrary and capricious under the court's interpretation of Fisher. On review, we conclude the trial court erred in its interpretation of Fisher as applied to the facts of this case.
In Thornton v. DHHR, 394 So.2d 1269 (La.App. 1st Cir.1981), this court upheld the State Civil Service Commission's decision upholding the termination of a Nursing Aide II for, among other things, being absent during her shift for approximately 45 minutes. Plaintiff was paged during her absence but did not answer. In upholding the Commission's decision, this court cited longstanding jurisprudence, holding that "legal cause for disciplinary action exists when the conduct complained of impairs the efficiency of the public service and bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged." Although there was no evidence that anything happened in plaintiff's absence, this court found that her absence alone impaired the efficient operation of the public service.
In Ferguson v. DHHR, Office of Management and Finance, 451 So.2d 165 (La.App. 1st Cir.1984), this court upheld the Commission's decision to suspend plaintiff for 45 days without pay for his lengthy, unexcused absence while he was presumably preparing for and eventually taking the CPA exam. In affirming the Commission's decision and finding that its actions were not arbitrary or capricious, this court noted the obvious importance of a supervisor knowing the location of his employees and the plaintiff's abuse of the leave policy, by attempting to classify the leave as sick leave, as action which, by its very nature, impairs the efficient operation of the public service for which he was employed.
More recently, in Fisher v. DHHR, Office of Human Development, 517 So.2d 318 (La. App. 1st Cir.1987), this court reversed the decision of the State Civil Service Commission, *1033 upholding plaintiff's suspension from work without pay for three days. Plaintiff was a permanent, classified employee who had worked for the state for over thirty years. A deputy clerk of court ordered her to issue a waiver of time delays in a pending private adoption case. Believing the use of such waiver to be improper, she requested that her supervisor obtain an opinion from DHHR's legal department. Her request was denied and instead plaintiff's supervisor sought a non-legal opinion on the use of such waiver in a voluntary surrender private adoption. Plaintiff eventually was ordered by a supervisor to issue the waiver; however, she refused to do so. Without her permission, another employee issued the waiver, signing plaintiff's name to it. Plaintiff was suspended for three days without pay, but, on appeal to the Civil Service Commission, a referee decided in her favor. DHHR appealed to the Civil Service Commission, which reversed the referee and reinstated plaintiff's suspension.
In upholding the decision of the referee, this court found that the appointing authority failed to carry his burden of proving that the plaintiff's conduct had, in fact, actually impaired the efficient and orderly operation of the public service. We concluded that plaintiff's failure to issue the waiver had not delayed the proceedings; thus, the efficiency of the public service was not impaired.
Citing this 1987 case as establishing a new standard, the trial court reversed itself herein and set aside its prior decision to affirm the Personnel Board's actions herein. However, the trial court erred in its application of Fisher when it concluded that the public service had not been affected or impaired by Burke's unexcused absence where no emergency situation had occurred in his absence.
In Ravencraft v. Department of Public Safety and Corrections, 608 So.2d 1051, 1057 (La.App. 1st Cir.), writ denied, 609 So.2d 829 (La.1992), this court recognized the propriety of disciplinary action against a police officer even absent a showing of a particular incident brought on by or occurring during the officer's absence. In Ravencraft, we held that disciplinary action was appropriate against a correctional officer on duty with the odor of alcohol on his breath, even absent any incident brought on by the officer's use of alcohol. Recognizing the increased potential for violent acts by prisoners if an officer exhibits the odor of alcohol, we concluded that disciplinary action was warranted even though the prison activities were uneventful on the date the officer had alcohol on his breath. We find the factors supporting our reasoning in Ravencraft are equally compelling in the case before us.
The primary reason the airport maintains two officers during the night shift is to make certain that a patrolling officer is available to address any potential emergencies which may arise during that shift as well as to deter any individual from criminal activity. Because one of the two officers is required to remain in the communications office at all times, it is paramount that the sole remaining officer be available on the premises to handle any incident that may arise as well as to deter potential offenders. The impairment lies in the fact that the airport was placed in the untenable position of not being able to handle any law enforcement, airline, firefighting or prison emergency when Officer Burke absented himself from the premises on the night of February 25, 1995. His conduct placed the other officer at substantial risk as well as subjecting the airport to serious potential fines. The record shows that had an emergency occurred, his employer would have been unable to reach him in the vehicle as he had traveled beyond the range of the emergency frequency employed by the airport. His unexcused and undisclosed absence from the premises placed the safety of the public and other personnel at increased risk of an incident occurring on the premises. See Ravencraft, 608 So.2d at 1057. Thus, factually, Burke's actions involved more than the mere failure to obey a direct order. Instead, his abandonment of his position had a direct and real impairment to the efficient operation of the security service for which he was employed. Cf. Fisher, 517 So.2d at 321.

CONCLUSION
For these reasons, we find that the efficient operation of the security force of the *1034 airport was in fact impaired by Burke's absence and the Board's action in affirming a five day suspension without pay as imposed by the appointing authority was not arbitrary or capricious. Accordingly, we reverse the February 21, 1997 judgment of the trial court and reinstate the decision of the Personnel Board in its entirety. Costs of this appeal in the amount of $414.66 are hereby assessed against plaintiff-appellee, Dennis Burke.
REVERSED AND RENDERED.
NOTES
[1] According to the record, Burke's superiors learned of his absence as a result of an anonymous complaint made by an airport worker who saw the vehicle being driven by a male caucasian near Bluebonnet and Interstate Highway 12 between 2:00 and 3:00 a.m.