723 So.2d 448 (1998)
Kevin L. STERLING,
v.
DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, LOUISIANA STATE PENITENTIARY. (Three Cases)
Nos. CA 97 1959 to CA 97 1961.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
*450 William H. Ritzie, Jr., Baton Rouge, LA, Attorney for Plaintiff/Appellant, Kevin L. Sterling.
Roxie Goynes-Clark, Baton Rouge, LA, Attorney for Defendant/Appellee, Department of Public Safety and Corrections.
Robert R. Boland, Jr., Baton Rouge, LA, Attorney for Allen H. Reynolds, Director, Department of State Civil Service.
Before SHORTESS, C.J., CARTER and WHIPPLE, JJ.
WHIPPLE, J.
In these consolidated cases, plaintiff, Kevin L. Sterling, appeals from a judgment of the State Civil Service Commission which upheld disciplinary action taken against him by the Department of Public Safety and Corrections, and affirmed the Department's eventual termination of his employment.
For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Kevin L. Sterling was employed by the Department of Public Safety and Corrections, Louisiana Sate Penitentiary (DPSC) as a Corrections Sergeant and was serving with permanent status. Sterling was assigned to Camp J, a maximum security facility housing disciplinary inmates who spend their stay in extended lockdown. This appeal arises from consolidated cases involving a series of incidents and suspensions without pay leading up to the eventual termination of Sterling's employment.

Misuse of Sick Leave in February 1995
Sterling was assigned to work the 5:15 a.m. to 5:30 p.m. shift at Camp J of the Louisiana State Penitentiary on the weekend of February 25-26, 1995. However, on February 24, 1995, he called his employer to report that he was sick and would be unable to work his scheduled shifts on February 25 and 26, 1995. He did not report for work that weekend. Although he was not seen by a physician over the weekend, when he returned to work on February 27, 1995, he presented a doctor's excuse from the Family Health Clinic covering his absence. The excuse was acquired by him at a doctor's visit on the Monday following the weekend he was off from work due to his claimed illness.
Subsequently, his employer received copies of attendance/sign-in sheets of the East Baton Rouge Parish Sheriff's Office 1995 Reserve Training Academy for February 25-26, 1995, which indicated that Sterling had attended training on those dates. Sterling later admitted attending the training on the days for which he had submitted a sick leave statement and had been absent from his scheduled duty shifts.

Refusal to Follow a Direct Order in March 1995
On March 1, 1995, while conducting an investigation concerning Sterling's abuse of sick leave, Captain Darwin K. Basco interviewed Sterling at the request of his superiors. Captain Basco informed Sterling that he was conducting the internal investigation and ordered him to answer questions concerning his whereabouts on the weekend of February 25-26, 1995. However, Sterling refused to answer Captain Basco's questions. On September 22, 1995, Sterling was given a suspension without pay of twenty 12-hour work days. The suspension was based on Sterling's violations of Rules 1 and 7 of the Corrections Services Employee Manual, for his misconduct in misusing sick leave and refusing to obey a direct verbal order.[1]

*451 Verbal Dispute in September 1995
On August 18, 1995, while the abuse of sick leave investigation was pending, Sterling filed a grievance with the DSPC. In the grievance, Sterling complained that despite a compelling medical need on August 15, 1995, his supervisors failed to provide him with a replacement within a reasonable time after he requested relief from his duties. A hearing on the grievance was held on September 1, 1995, with Assistant Warden Billy Travis presiding. Concluding that the grievance lacked merit, Warden Travis dismissed the complaint.
At some time after the hearing, Sterling was attempting to leave work for alleged medical reasons when he encountered Warden Travis, his superior officer. After briefly speaking with Sterling, Warden Travis specifically instructed Sterling to report to the institution hospital before leaving the work premises. Upon hearing these instructions, Sterling answered in a disrespectful and inappropriate manner, telling the Assistant Warden that he "was not going to stand for the way he handled" him at the earlier grievance hearing and informing the Assistant Warden that he "needed an attitude adjustment." These comments were made in the presence of Lieutenant Colonels Clovis Tillery and Jimmy L. Johnson, who later confirmed that the statements by Sterling were unwarranted and unprovoked inasmuch as Assistant Warden Travis had not made derogatory comments towards Sterling as he later claimed. On March 14, 1996, Sterling was again suspended, receiving a suspension of thirty 12-hour days for violating Corrections Services Employee Manual Rule 13(b).[2]

Abuse of Family Leave in November 1995
In November 1995, Sterling requested and was granted leave by the DPSC under the Family and Medical Leave Act (FMLA) for the care of his new baby. While out on leave, Sterling worked for the St. Francisville Police Department. Had Sterling not been granted leave as requested on November 10, 1995, he would have been scheduled to work for the DPSC. Thus, on April 22, 1996, disciplinary action was again taken against Sterling for violating Corrections Services Employee Manual Rule 10.[3] Based on this final act of misconduct and his prior incidents of misconduct, Sterling's employment was terminated, effective April 30, 1996.
Sterling filed three separate appeals to the Civil Service Commission which were consolidated and heard by a Civil Service Referee. After notice and a full evidentiary hearing, the referee upheld the DPSC's suspensions and termination of Sterling's employment based upon his abuse of leave on February 25-26, 1995, failure to obey a direct order on March 1, 1995, disrespectful and inappropriate comments made to a superior officer on September 1, 1995, and misconduct in obtaining leave on November 15, 1995. Sterling applied to the Civil Service Commission for review of the referee's decision. However, the Commission denied the application. Sterling now appeals to this court.

ASSIGNMENTS OF ERROR ON APPEAL
In his appeal to this court, Sterling assigns as error: (1) the Commission's finding that plaintiff's absence from work on February 25 and 26 constituted an abuse of sick leave warranting a 20 day suspension without pay; (2) the Commission's finding that plaintiff's failure to respond to an interrogation by a superior about private activities (i.e., his whereabouts on the weekend of the February 25-26) constituted the disobeying of a direct order; (3) the Commission's finding that plaintiff's comment to a superior officer was disrespectful and inappropriate and warranted a 30 day suspension without pay; (4) the Commission's finding that plaintiff's engagement in part-time employment, while on authorized leave under the FMLA constituted *452 an abuse of leave; and (5) the Commission's finding that the cumulative charges against plaintiff warranted termination for cause.

DISCUSSION
Louisiana Constitution Article X, § 8(A) provides, in pertinent part: "No person who has gained permanent status in the classified state ... service shall be subjected to disciplinary action except for cause expressed in writing." The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8(A). Further, the Commission's decision is subject to review on any question of law or fact upon appeal to the court of appeal. La. Const. art. X, § 12(A); Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 113 (La.1984).
In civil service disciplinary cases, an appellate court is presented with a multi-faceted review function. When reviewing the Commission's findings of fact, the appellate court is required to apply the manifestly erroneous or clearly wrong standard of review. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96); 666 So.2d 641, 647.
However, in evaluating whether the Commission's determination as to whether the disciplinary action taken by the Department is based on legal cause and commensurate with the infraction, the reviewing court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. Bannister, 95-0404 at p. 8; 666 So.2d at 647.
Measured by these standards, we find no error in the factual findings of the Commission. Moreover, for the reasons which follow, we find no abuse of discretion or capriciousness in the Commission's determination that the disciplinary action taken by the DPSC was based on legal cause and commensurate with plaintiff's repeated infractions.

Factual Findings of the Commission
Applying the above precepts, we conclude that the findings of fact set forth in the Commission's decision herein are amply supported by the record herein.
The evidence of record clearly shows that Sterling abused the sick leave policy on February 25-26, 1995. At the hearing, documentary evidence was presented (and Sterling admitted) that he called in sick for the weekend but instead attended an officer training course offered by a separate law enforcement agency. Deputy Warden Richard L. Peabody testified that as set forth in the Employee Manual, sick leave is restricted to those occasions when an employee is so (incapacitated that he cannot work or for attending medical appointments. Despite Sterling's after-the-fact explanations, and pretermitting the issue of fraud, it is clear that Sterling was not entitled to the sick leave that he claimed and that his actions were in clear violation of departmental policy for use of sick leave. Although Sterling notified the DPSC that he was going to be out sick on February 25-26, and supplied a doctor's excuse upon his return to work, he instead participated in a scheduled training program over the two day period consisting of defensive tactics training, officer survival training and firearms training for law enforcement officers.
Likewise, while there is some conflict as to the exact events which took place on September 1, 1995, we find there is ample evidence, through the testimony of Officers Travis, Tillery, and Sterling, to support the finding that Sterling's conduct toward Warden Travis also violated departmental rules. His conduct was a clear violation of Corrections Services Employee Manual Rule 13(b), which prohibits words and conduct which create an intimidating or offensive work environment. Both Warden Travis and Lieutenant Colonel Tillery testified that Sterling told Warden Travis, without provocation, that he needed an "attitude adjustment." Under the undisputed circumstances set forth by the testimony of Sterling and these officers, we agree that Sterling's conduct and comments were intimidating and offensive, in violation of DPSC rules.
With regard to Sterling's leave taken under the FMLA, we also find ample support in the record for the factual finding that Sterling was working for the St. Francisville *453 Police Department while out on leave granted by the DPSC under the FMLA. The evidence of record, including Sterling's admissions, clearly shows that Sterling was working at an outside agency after improperly obtaining leave based on his articulated claim that he needed to be off duty to care for his new baby. We find that the record supports the determination that Sterling's conduct violated Rule 10, which prohibits the making of false statements or the omission of important facts on official reports or documents.
Finally, we conclude that the record amply supports the finding that Sterling was properly informed of the nature of the investigation concerning his earlier abuse of sick leave and improperly refused to answer questions during the inquiry. Sterling was informed by the investigating officer, Captain Darwin Basco, in the presence of at least two other officers, that the investigation was being conducted as an institutional disciplinary investigation pursuant to the Department's rules and would not involve any criminal matters or charges. Thus, the record supports the factual finding that Sterling improperly refused to answer the questions and violated Rule 7 by refusing to follow a direct verbal order.[4]
After carefully considering the record herein, we find ample support for the Commission's factual findings and its determination that Sterling violated Corrections Services Employee Manual Rules 1, 7, 13(b), and 10. However, our inquiry does not end here. As a reviewing court, we must also consider the propriety of the disciplinary action imposed herein.

Disciplinary Action Taken
A classified employee may be disciplined only when there is a real and substantial relationship between that employee's improper conduct and the efficient operation of the public service. Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983). For the February 1995 abuse of sick leave incident and refusal to answer questions about that weekend, Sterling was suspended without pay for twenty 12-hour working days. For the September, 1995 incident, Sterling was suspended without pay for thirty 12-hour days. Finally, based on the November, 1995 incident, and the previous incidents, Sterling's employment was terminated. After careful consideration of the record herein, we find no abuse of discretion and conclude that the disciplinary action taken herein was warranted.
Pretermitting the issue of Sterling's refusal to obey the direct order of a superior officer to answer questions posed as to his whereabouts, we find that abusing the sick leave policy, treating a superior officer with disrespect, and knowingly making false statements regarding his FMLA leave, are acts of misconduct constituting cause for discipline. The record shows that the conduct of this employee impaired the efficiency of the public service and had a real and substantial detrimental effect upon the efficient operation of the public service. His misconduct impaired the DPSC's ability to provide a safe and secure environment, maintain employee morale, and remain within the prison's budget. Moreover, his absence necessitated reallocation of resources and exposed the department to payment of overtime to employees called in to cover his shifts. The detrimental impact of Sterling's misconduct is documented in the record by the testimony *454 of Lieutenant Colonel Louie Calvert and Deputy Warden Richard L. Peabody.
As Deputy Warden Peabody observed:
In the type of operation we have given the fact that the orders have to be followed immediately and properly in various situations, having an atmosphere where ... officers disrespect their superiors is not conducive to that type of operation. It can lead to a breakdown in the chain of command and just undermine the operation.
* * * * * *
If they don't like the orders, they always have a right to grievance.
* * * * * *
To be uncooperative with an investigationan internal investigation, that also undermines the security of the institution, because you can't really find out what occurred and get the facts you need in order to make decisions as to how to manage your employees and your inmates.
* * * * * *
The institution is chronically shorthanded. On any given day, any number of officers are called in to work overtime anywhere from as few as one or two to as many as forty or fifty, just depending upon the given circumstances. When officers do not show up for work and someone must come to the [job], we are under a federal consent decree that requires that we have a minimum number of officers on duty at all times to man certain positions. Then, we must have an additional force of roving officers to carry out other related duties. If we don't have that staff on duty at the time that the shift changes, then we have to call people in or work people over which creates a hardship financially for the institution because we are not appropriated funds for overtime. We have to manage that in our existing budget. As recently as two weeks ago, our overtime for a two week pay period jumped from, approximately, eighty thousand to a hundred and forty thousand that we were not budgeted for. So, that starts to impact other areas of the institution besides personnel, because you have to make it up out of your budget, not to mention that, working short-handed in security is bad for security, because you become lax and miss things and don't do everything you need to do. It's also bad for morale when good employees are required to have to come into work or not be allowed to take off, because other employees are abusing leave.
Sterling argues there was no testimony showing that any of his acts singularly or cumulatively hindered any operations at Angola during any of the time periods involved. However, there is no need for a showing of a particular incident or emergency to establish impairment of the public service. Based on the precarious situation in which Sterling's actions left the prison, the Commission agreed with the DPSC that Sterling's actions had impaired the public service, and that disciplinary action was warranted. We also agree.
In Ferguson v. DHHR, Office of Management and Finance, 451 So.2d 165 (La.App. 1st Cir.1984), this court upheld the Commission's decision to suspend plaintiff for 45 days without pay for his lengthy, unexcused absence while he was presumably preparing for and eventually taking the CPA exam. In affirming the Commission's decision and finding that its actions were not arbitrary or capricious, this court noted the obvious importance of a supervisor knowing the location of his employees. Moreover, as we noted therein, abuse of the leave policy, by attempting to classify the leave as sick leave, is an action which, by its very nature, impairs the efficient operation of the public service for which he was employed.
More recently, in Ravencraft v. Department of Public Safety and Corrections, 608 So.2d 1051, 1057 (La.App. 1st Cir.), writ denied, 609 So.2d 829 (La.1992), this court recognized the propriety of disciplinary action against a police officer even absent a showing of a particular incident brought on by or occurring during the officer's absence. In Ravencraft, we held that disciplinary action was appropriate against a correctional officer reporting for duty with the odor of alcohol on his breath, even absent any specific or particular incident brought on by the officer's use *455 of alcohol. Recognizing the increased potential for violent acts by prisoners if an officer exhibits the odor of alcohol, we concluded that disciplinary action was warranted even though the prison activities were uneventful on the date the officer had alcohol on his breath. We find the factors supporting our reasoning in Ravencraft are equally compelling in the case before us.
The primary mission of a prison is to keep the institution secure. This goal can only be reached through the employment of a particular number of personnel and the deployment of such personnel in a strict, consistent manner. The impairment lies in the fact that the prison was placed in the untenable position of being short on personnel and having to spend beyond its budget in order to maintain the required level of security. Additionally, disrespect of superior officers and failure to follow their orders in a prison setting is particularly problematic and detrimental to the regimented schedule and chain of command necessary at a prison facility. Sterling's misconduct impaired the public service by placing the safety of the prison personnel and inmates at increased risk of an incident occurring on the premises. See Ravencraft, 608 So.2d at 1057. Thus, singularly and cumulatively, Sterling's abuse of sick leave, failure to obey a direct order, disrespect of a superior officer, and falsification of official documents had a direct and real impairment to the efficient operation of the prison facility.
When judging the Commission's exercise of its discretion in determining whether disciplinary action is based on legal cause and the punishment is commensurate with the infraction, a reviewing court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion. LSA-R.S. 49:964(G)(5); Walters, 454 So.2d at 114; Cha-Jua v. Department of Fire, 577 So.2d 332, 335 (La. App. 4th Cir.), writ denied, 580 So.2d 675 (La.1991). The Commission has much discretion in determining the appropriate disciplinary action when legal cause for such action has been established. Howard v. Housing Authority of New Orleans, 457 So.2d 834, 845 (La.App. 1st Cir.1984). A conclusion of a public body is "capricious" when the conclusion has no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Coliseum Square Association v. City of New Orleans, 544 So.2d 351, 360 (La.1989). Here, there is no evidence of caprice or arbitrariness in the discipline imposed.
On review, we find no error in the disciplinary action imposed by the Commission. The decisions to suspend and ultimately terminate Sterling's employment were not "arbitrary, or capricious, or characterized by abuse of discretion." Instead, as the record overwhelmingly demonstrates, a real and substantial relation exists between appellant's actions and the impairment of the efficiency and goals of the public civil service.

CONCLUSION
For these reasons, we reject the appeal and affirm the decision of the State Civil Service Commission. Costs are assessed against appellant, Kevin L. Sterling.
AFFIRMED.
NOTES
[1] Rule 1 provides that an employee shall not "engage in conduct that impairs the security or stability of the unit; the safety of staff or inmates; or the efficiency of the state service." Rule 7 provides, in pertinent part, that "[d]irect written or verbal orders must be obeyed cooperatively and promptly."
[2] Rule 13(b) provides that "[d]eliberate and/or repeated unsolicited words ... which have the purpose or effect of unreasonably interfering with another employee's work performance or creating an intimidating or offensive work environment are prohibited."
[3] Rule 10 provides that knowingly making false statements or deliberate omission of important facts on official reports or documents is forbidden.
[4] At the time of the investigation and again at the hearing before the referee, Sterling asserted that he was not required to answer the questions posed to him, based on a claim of 5th Amendment privilege against self-incrimination and a claimed right to privacy. On appeal to this court he again contends that his 5th Amendment privilege and right to privacy justify his refusal to follow the direct order of Captain Basco, i.e. that he disclose his whereabouts and activities on the weekend of February 24-25, 1995. The referee rejected this claim noting under the circumstances, and based on the existing facts found by the referee, no privilege existed to justify Sterling's refusal to follow the direct order given to him. We agree. The record shows he was advised regarding the limited scope of the inquiry, there was no attempt to coerce him to incriminate himself or to relinquish constitutional rights, and accordingly, no privilege existed to excuse his refusal to answer. Thus, appropriate disciplinary action for impeding the departmental investigation was reasonable and justified. See Lemoine v. Department of Police, 348 So.2d 1281, 1284 (La.App. 4th Cir.1977).